The Court now will move to Appeal 25-1099, Klein v. Daniels. Mr. Seville, we'll begin with oral argument from you. Thank you, Your Honors. My name is Scott Seville. I represent the appellant, Brandon Klein. A few items, Your Honors. First, this is an item regarding qualified immunity and what the totality of the circumstances for the Officer Daniels at the time were. A bit of a complicated fact pattern, just to walk through it briefly. Brandon Klein had called Cherville Police Department and indicated he had a protective order against him. There was some waffling about whether he should go on-site and meet an officer at 504 Banco Court or come to Cherville Police Department. Ultimately, they said, come to Cherville Police Department. At that time, he and his mother drove to Cherville Police Department. His mother entered the lobby. According to the facts, as presented by the plaintiff, Brandon Klein, his mother was then told to go to 504 Banco to meet with an officer. Upon arriving at 504 Banco, an officer was present, parked at the end of the block. Brandon Klein, out of an abundance of caution, never left the vehicle, never got out, never spoke to anyone. His mother— Do you agree about 100 feet away? I said at least 100 feet. At least 100 feet. It was never said specifically just at least 100 feet away. He then—Brandon Klein then approached—Brandon Klein stays in the vehicle. His mother, Geraldine Klein, approaches the officer, parks the car, approaches the officer, speaks to the officer. The officer says, you know, he's at Brandon Klein, what are you doing here? She says, we were sent by dispatch. They then leave—he says, well, he has to leave. So he's—so she gets back in the vehicle. They leave. They eventually go back to Cherville Police Department. He's at the Cherville Police Department when Officer Daniels shows up and arrests him. In Officer Daniels' narrative, Officer Daniels specifies that, you know, he says that Brandon Klein was causing a disturbance in the lobby. That was not—I would call the court's attention to specifically, for that particular part, page 19 of the Pell Volume 2. And page 116, though, what Officer Daniels did not know at that time was that Brandon Klein was supporting that interaction in the lobby and there was no such disturbance taking place. The issue here is what did Officer Daniels reasonably know at the time? Well, he knew at the time that Brandon Klein had reached out to SBD first, that he had appeared on site, and it was very inconsistent with a person who was trying to violate. A person to violate an invasion—to be convicted of an invasion of privacy has to knowingly and intentionally be violating the order. And there was nothing— Before we go down that path, I did have one follow-up question. Is the only claim you're bringing an unlawful detention claim? In this instance, Your Honor, yes. I'm sorry? Yes, Your Honor. And you are not bringing a false arrest claim? At this time, no, Your Honor. And so at this time, he knows that there were a number of items that were very inconsistent with knowingly or intentionally violating. First, Brandon Klein calls Cherville Police Department. Secondly, when they show up at Benko Court, Officer Daniels is there, it would be very odd for somebody who was trying to violate to choose to show up when an officer is already on site. But they show up, they park, his mother goes up, explains the situation, explains that they were sent by dispatch, and then Officer Daniels doesn't arrest on the spot, because obviously there's a question there. Then they leave, immediately upon being told to leave, they leave the location. So we have a situation where Officer Daniels knows that, hey, they were told this, or at least that's what they've said. He knows that they left upon him telling them, hey, it's not okay to be here at this time. He knows that Brandon Klein initiated the conversation with SPD. And he knows that Brandon Klein went back to SPD, which is not something that somebody who believes they've just violated the law would necessarily do. Let me ask you a question. Is there a case that you can cite with similar facts to show that Indiana recognizes a permission by dispatch type defense, meaning that he was only there because dispatch said he could go there, or they were equivocal with regard to whether he could go there? I wouldn't have a case that's specifically to that item. However, I could state that certainly the situation is such that we know that under violation of this type is a well-known and well-understood item by the officer. You have to knowingly and intentionally violate the fact that he was told to go there by an officer after having specifically gone to the lobby, had that discussion, would strongly negative that. Additionally, after his arrest, and again, this is post-arrest, but pursuant to- Were there any facts that put Officer Daniels on notice that Klein had been directed that he could go to the house? Yes. First, there was the fact that his mother told Officer Daniels that on the scene at 504 Banco Court. Secondly, in paragraph 25 of Brandon Klein's affidavit, he specifically describes a conversation with Officer Daniels afterward in which Daniels had confirmed with dispatch that they had in fact sent Brandon Klein there. At the time of the arrest, though, I want to back up because you brought up a good point about the affidavit. Why was there a hypothetical probable cause affidavit filed? What was the purpose of that document? So the probable cause affidavit was to support the arrest of Brandon- The hypothetical? I'm talking about docket 12 at 273 and 274. What was the purpose of that filing? The hypothetical probable cause affidavit was to demonstrate the facts as they were known to the officer at the time. Specifically, he knew at that time that Brandon Klein had contacted SBD first. He knew at the time that he had been sent there by dispatch. He knew at the time that he had then followed Officer Daniels' orders directly at all times. It was to illustrate the items that he knew at the time that were either exculpatory or were falsely inculpatory and to show what a probable cause affidavit with those exculpatory items included would have looked like. So specifically though, the further issue is if Officer Daniels, it's unclear as to when exactly he would have known of the fact that they were sent there by dispatch. Certainly he was told by Gerald Klein on the scene. He then later confirms it after Mr. Klein is arrested. However- Can I ask you about that? Yes. I think that's the paragraph 25 or the statement. Yes, sir. Okay. Alright. Is there evidence that Officer Daniels made that statement, meaning the one in paragraph 25, based upon information that he learned from Dispatcher Wynkoop as opposed to is it possible that Officer Daniels made that statement based upon what your client's mother told him at the scene? Your Honor, it's actually unclear as to whether or not he learned this from somebody else. It was Mr. Klein's understanding that it was from- Right. So I thought that what Officer Daniels could have been doing is just saying, yeah, I know that. You're not using these words exactly, but that's what your mom told me at the scene. And I would agree, Your Honor, that's a possible interpretation. However, at a motion for summary judgment, all inferences would break in favor of the non-movement. And so the inference would be, when he's saying this, that he's- But he didn't come forward with any evidence that Dispatcher Wynkoop actually told Officer Daniels that she directed your client to the scene. What we have from Officer Wynkoop is in that recording, and it's actually the opposite. She's saying, hold on, no, I told him not to go there, go to the police department. Yes, and I think it would be appropriate to address that recording also. But before we do that, just to answer your question, I believe that whether or not he learned this from Wynkoop or another member of Dispatch, or he learned it from the mother, is an item that's unclear at this time. However, the inference would be, if you're saying that after the fact, that you learned that from someone other than the person you'd heard from previously. Who that actually would ultimately have been is unknown. Would you like to reserve the remainder of your time? Yes, Your Honor. Thank you, Mr. Saville. Ms. Chrisman will go to you now for argument on behalf of the appellee. Good morning. May it please the Court. Kaitlin Chrisman on behalf of Defendant Appellee Officer Brian Daniels. I wanted to first address a question that was posed to counsel regarding when Sergeant Daniels was put on notice as to when the client could go to the actual location. And that did not occur until his mother came on scene. And to rewind a little bit, Officer Daniels testified that as soon as he saw Cline arrive at 504 Benko Court, parked in that car, that is, he believed it was a good possibility that he had violated the protective order. This meets the low standard of probable cause because he's not required to prove every element of the statute, you know, that he has to knowingly violate the protective order. He's not required to do that. It's solely whether a reasonable officer would believe that there was a probability of criminal activity which was present here. And with respect to the actual support within case law, counsel would direct the court to Hendrix v. State, in which the Court of Appeals held that being within 1,000 feet of the protected person violated the protective order. Here, at least 100 feet is significantly less than 1,000 feet, and therefore, you know, could be seen to have violated the protective order. Also, with respect to that hypothetical affidavit, counsel had mentioned that there were additional facts that he had included in the hypothetical affidavit, but that's not the standard here. The standard here is you take the allegedly false statements out of the preexisting probable cause affidavit. You determine whether that determines probable cause. Here you take out those false statements that Klein yelled at Steven Salatis and Sergeant Daniels, and he was prohibited from communicating with Salatis. And probable cause was not defeated because that affidavit also stated that he showed up in front of the house where he was prohibited from being near. Then, as Your Honors had mentioned, that recorded conversation with Officer Wynkoop definitively establishes what Sergeant Daniels knew at the time that Mr. Klein showed up at the residence. So we're not contesting that the protective order did not allow Mr. Klein to approach the parents? No, the protective order did not say that. The protective order states that Mr. Klein was ordered to stay away from the residence, and the residence that her parents, the Salatises, lived at was 504 Benko Court. And there's no distance included in the protective order? That's correct, Your Honor. There's no distance. It just says to stay away. And based off of the Hendrix v. State, it's reasonable to believe that being within 100 feet of a protected address, which is a stationary object, is something that would violate that protective, that stay away order. Klein also repeatedly emphasizes the conversation between Ms. Klein and the police department representative that Sergeant Daniels knew of the directive, but this conversation is irrelevant to what he knew. As I had stated previously, the recorded phone call between Sergeant Daniels and Dispatcher Wynkoop, as well as Sergeant Daniels' testimony, conclusively establishes his knowledge. He told the dispatcher to tell Klein to remain at the police station. She said that she would do that. She then told him that he had gone outside, so it was a possibility that he was going to stay there, but she did advise to stay. So as far as Sergeant Daniels knew, as soon as Klein showed up, he was instructed to stay at the police station. I don't think this statement from the mother is irrelevant. I think it's relevant, but it's a separate question of whether the officer was compelled to believe it. Correct. You're right, Your Honor. Well, and to that point, once probable cause is established, an officer is not required to continue investigating to determine whether a suspect's claim of innocence, or even the suspect's mother here, is correct once that probable cause has been established. And that was the moment that he saw him arrive, and that was prior to Ms. Klein coming up to him and stating that they were told to come there. Wynkoop works in the dispatch department? That's correct. Whatever it's called? Yes. Okay. And her conversations, as far as you know, are recorded? With Sergeant Daniels, correct. Are they recorded otherwise? She's talking on the phone to somebody? Yes. Yes. Yes, Your Honor. Thank you. The phone calls on the recorded dispatch line are recorded. Okay. So, if Officer Wynkoop had told either Mr. Klein or Mr. Klein's mother that it's fine to go to the home, there would be a recording of that, would there not? No, because Mr. Klein and his mother showed up in person. Oh, and she works at the, wherever they showed up? Correct. At the police department? That's correct, Your Honor. Cheryville? And is Wynkoop a sworn officer or a dispatch employee? She's a dispatch employee. So, Klein also argues that Sergeant Daniels can't bury his head in the sand once this claim of innocence comes up in order to preserve probable cause, but as I stated previously, Ms. Klein's claim of innocence for her son is far from conclusively established. He knew at the time that he was, he had directed Ms. Klein through Wynkoop to stay at the residence and he did not. And so, the question of whether Klein's innocence, it was not readily apparent at the time when Ms. Klein told this to Sergeant Daniels and further investigation would have been necessary to determine whether that, because he had a trusted colleague telling him that he, she told him not to go to the address and then he gets the suspect's mother coming saying that there was a seemingly innocent explanation as to why he was there. So, there was definitely further investigation that would have been required in order for him to determine that. And so, Sergeant Daniels was free to arrest Klein and allow the assessment of that claimed innocence up to the court. And then, just briefly on the qualified immunity aspect, Klein did not show that it was clearly established that a reasonable officer would not have arrested him for intentionally arriving within 100 feet away from the restricted address. To the judge's question earlier, there is, you know, no such case that exists that such behavior would have violated the Fourth Amendment. And it is also important to note that Sergeant Daniels' interpretation of the facts, even if it was mistaken as to whether 100 feet would violate that protective order, that mistake of fact is still entitled to qualified immunity. There is also the additional aspect here that Sergeant Daniels did talk to the deputy prosecutor about all of the facts that he knew at the time. And the deputy prosecutor told him that he could arrest Klein. And Klein relies on the omission of the directive that, you know, Ms. Klein was told that she could go to the residence. But when you remove that omitted or you add that omitted statement into that probable cause affidavit, probable cause still exists because, as I stated previously, he was under no obligation to continue investigating that claim of innocence. And so, qualified immunity based on reliance on advice of counsel is also present here. And so, for the reasons argued today and argued in the briefing, Sergeant Daniels respectfully requests that this court affirm the summary judgment in his favor. Thank you, Ms. Grissman. Thank you. Mr. Seville, we'll go back to you now. We'll give you two minutes for rebuttal. Thank you, Your Honor. Two quick items, Your Honor. First, with regards to the conversation with Wynkoop, it's on page 100 of the appellate volume. I wanted to point out that it's a profanity-laden tirade between Wynkoop and Officer Daniels, suggesting that he would have known that she had a bit of a bias as to what was going on in regards to him. I believe she called him a couple of things. I won't repeat here. Also, given the admitted negative opinion, it is the totality of the circumstances as appeared before Officer Daniels at the time. And I just want to emphasize, he was present. Officer Daniels was present at 504-BANCO. One of the things he knows is that he knows that I'm here. I'm here at 504-BANCO for a reason, and the reason is likely because I'm here to meet with the clients to get this mail. He also knows that he arrived. He knows that he called dispatch. He knows that he went to SPD. He knows that he went to 504-BANCO. He knows that he didn't actually approach. He also further knows that when he was told to leave, he left immediately. He knows that he went back to SPD, and so for those reasons, Your Honor, it should have been clear to him at the time that there was never any intent to violate on the part of Mr. Klein, and all of the actions suggested the opposite, that he was not intending to violate the protective order, but in fact was simply following the directions of SPD. Thank you, Your Honors. Thank you, Mr. Seville. Thank you, Ms. Chrisman. The case will be taken under advisement.